UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| JEREMY DAVID ASHER, | Case No. 19-CV-3002-WMW-KMM |
| Plaintiff, | |
| v. | **Report and Recommendation** |
| BRIAN NINNEMAN, PHILLIP OLSON, TIMOTHY CARMAN, ANTHONY HERRING, JOSEPH MARCZAK, ZACHARY CHRISTOPHERSON, MICHAEL GALLAGHER, and BRITANY MONETTE, | |
| Defendants. | |

This matter is before the Court on two motions to dismiss filed by the defendants in this case. (ECF Nos. 16, 29.)[1] After careful consideration, the Court recommends that these motions be granted and the case dismissed.

I.   Factual Background

Mr. Asher is civilly committed to the Minnesota Sex Offender Program ("MSOP") and lives at MSOP's Moose Lake facility. (Compl. at 1.) He alleges that on or about November 14, 2018, he was assigned a new roommate. (*Id.* at 3.) Mr. Asher states that the new roommate asked Mr. Asher if he snored while he sleeps. (*Id.*) When Mr. Asher replied that he did, the roommate allegedly told him, "Well if you do, we'll be handling it." (*Id.*) Mr. Asher believed this to be a threat, and told

---

[1] Docket entry 16 is a Motion to Dismiss filed by defendants Brian Ninneman, Phillip Olson, Timothy Carman, Anthony Herring, Joseph Marczak, Zachary Christopherson, and Britany Monette. Docket entry 29 is a Motion to Dismiss filed by defendant Michael Gallagher. Mr. Gallagher is now represented by the same counsel as the other defendants, but was on leave at the time the first Motion was filed, and was not represented at that time. In his Motion, Mr. Gallagher indicated his intention to join the other defendants' Motion.

MSOP security counselors and defendants Brittany Monette and Zachary Christopherson that he did not feel safe with the new roommate. (*Id.* at 3.) Mr. Asher alleges that Ms. Monette and Mr. Christopherson told him to go to a separate "team room" while they consulted with defendant Brian Ninneman, who was the unit director. (*Id.*)

Mr. Asher alleges that Mr. Ninneman then visited him in the team room, where he told Mr. Ninneman what the roommate had said. (*Id.*) He asserts that Mr. Ninneman then left to consult with defendant Philip Olson, who was the assistant group supervisor. Incident reports that Mr. Asher attached to his complaint indicate that both Mr. Ninneman and Mr. Olson spoke separately with Mr. Asher and his roommate in an attempt to resolve the conflict. (ECF No. 12, Ex. 6.) Mr. Ninneman offered a "CREST" mediation session, advising Mr. Asher that this was the best way to handle the situation. (ECF No. 12, Exs. 1, 7.) However, Mr. Asher refused this offer. (*Id.* at Exs. 1, 7.) These incident reports indicate that Mr. Asher was already on a restriction status ("RS3") because of a prior rule violation. (*Id.* at Exs. 1, 6, 8.) He states this meant that he had to stay in his room except for a ten-minute break each hour. (Compl. at 4.)

Mr. Asher alleges that Mr. Ninneman and Mr. Olson instructed him to return to his room, which he refused to do because he was afraid of his roommate. (Compl. at 3.) MSOP security counselor and defendant Michael Gallagher was then brought in. (*Id.*) Mr. Asher asserts that once again he was instructed to return to his room, and that he refused. (*Id.*) Incident reports indicate that Mr. Gallagher told Mr. Asher that he was violating his RS3 status by refusing to comply with staff directions, and placed him on "prehearing restriction." (ECF No. 12 at Exs. 6, 8, 10.) After continued refusal to enter his room, Mr. Asher states that Mr. Gallagher "called for an a-team response." (Compl. at 3.) He alleges that three security counselors responded to Mr. Gallagher's call: defendants Timothy Carman, Joseph Marczak, and Anthony Herring. (*Id.*) Mr. Marczak told Mr. Asher to return to his room, and once again he refused to do so. Mr. Asher states that he told Mr. Marczak he would not do so because he was afraid of his roommate. (*Id.*) He alleges that Mr. Marczak told him that if he did not comply, he would be placed in wrist restraints and taken to the high security area ("HSA"). (*Id.*) Mr. Asher asserts that he continued to refuse to return to his room. (*Id.*)

2

Mr. Asher alleges that he was then handcuffed, pat searched, and taken to HSA by Mr. Carman and Mr. Marczak. (*Id.*) He states that he was told he would not be uncuffed unless he consented to an unclothed visual body search ("UVBS"). (*Id.*) Mr. Asher agreed, and Mr. Carman and Mr. Marczak conducted the UVBS. (*Id.*; *see also* ECF No. 12 at ex. 2.) Mr. Asher alleges that the two security counselors also took his eye glasses. (Compl. at 3.) When he informed them that he could not see without the glasses, they allegedly responded that he could use the glasses to hurt himself. (*Id.*) Approximately 24 hours after arriving at HAS, Mr. Asher was released. (*Id.*) Upon his release, Mr. Asher returned to his living unit and was given a behavioral expectations report ("BER") for his earlier conduct, and an RS3 consequence. (*Id.*)

## II.   Analysis

Mr. Asher alleges the actions of the defendants were a violation of the Fourth, Eighth, and Fourteenth Amendments of the Constitution. He sues all the defendants in both their individual and official capacities, seeking declaratory, injunctive, and monetary relief.

### A.   Legal Standard

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of a complaint for lack of subject-matter jurisdiction. Jurisdiction is "a threshold question," and is properly decided at the outset of litigation, in the interest of judicial economy. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). The plaintiff "bears the burden of proving the existence of subject matter jurisdiction," and courts may consider materials outside the pleadings when determining questions of subject matter jurisdiction without applying a summary judgment standard *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citations and quotations omitted). Additionally, the Court accepts all factual allegations in the pleadings as true, and must view them in the light most favorable to the non-moving party. *E.g.*, *Great Rivers Habitat Alliance v. Federal Emergency Management Agency*, 615 F.3d 985, 988 (8th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss for failure to state a claim. "[A] complaint must contain sufficient factual allegations to '[s]tate a claim to relief that is plausible on its face'" in order to withstand a motion to dismiss under Rule 12(b)(6). *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). While "detailed factual

3

allegations" are not required, the facts contained within a complaint must be specific enough to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see also United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). It is not enough for a complaint to employ "labels and conclusions," or simply restate the elements—more is required. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *Raynor*, 690 F.3d at 955.

### B.   Official Capacity Claims

The Eleventh Amendment provides states immunity from suits brought in federal court. *DeGidio v. Perpich*, 612 F. Supp. 1383, 1388 (D. Minn. 1985) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984)). Sovereign immunity applies in all cases where a citizen attempts to bring claims against a state, unless the state has waived its immunity or Congress has abrogated it. *Id.* at 1388–89. The doctrine of sovereign immunity fully protects MSOP from official capacity claims seeking damages. Minnesota has not waived its immunity to suit in cases such as these, and Congress has not abrogated it. *See* Minn. Stat. § 1.05 (waiving immunity for certain claims not presented here); *DeGidio*, 612 F. Supp. at 1389. Therefore, the Court lacks subject matter jurisdiction for the official capacity claims for damages presented here.

Mr. Asher invokes the *Ex Parte Young* doctrine in an attempt to avoid dismissal of the official capacity claims, but this argument does not carry the day. "Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011). Determining whether the *Ex Parte Young* doctrine applies is relatively straightforward. First, the Court asks whether the complaint alleges an ongoing violation of federal law. *Id.* Additionally, the defendant for whom the *Ex Parte Young* exception is sought must have "some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). However, "that connection does not need to be primary authority to enforce the challenged law…. Nor does the [state official] need to have the full power to redress a plaintiff's injury in order to have 'some connection' with the challenged law." *281 Care* at 632–33. If the Court determines that the complaint alleges an ongoing violation of federal law and the state official in question has "some

4

connection" with the challenged law, then it moves to the second part of the *Ex Parte Young* inquiry: whether the complaint requests prospective injunctive relief. *See 281 Care*, 638 at 632.

Even under the most liberal reading of the complaint, the Court cannot discern any allegation of ongoing violations of federal law. Indeed, the allegations contained within the complaint are all written in the past tense, and clearly allege an isolated incident, which Mr. Asher argues was a violation of both the Constitution and MSOP's own policies. (*See* Compl. at 4.) Because Mr. Asher has not alleged an ongoing violation of federal law, the *Ex Parte Young* doctrine does not apply.[2]

In sum, the Court has no subject matter jurisdiction over the official capacity claims in this case. Accordingly, they should be dismissed.

### C. Failure to Allege Personal Involvement

The defendants argue that all claims against Ms. Monette, Mr. Christopherson, Mr. Ninneman, Mr. Olson, Mr. Herring, and Mr. Gallagher should be dismissed because Mr. Asher has failed to allege any personal involvement by them. The Court agrees. In a civil rights action, a plaintiff must plead that each government-official defendant violated the Constitution through their own individual actions. *Iqbal*, 556 U.S. at 676; *see also Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001). Unless an official has a direct responsibility for the alleged deprivation of rights, a plaintiff cannot establish liability for that defendant. *Clemons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007). Mr. Asher's claims seem to be based solely on his HSA placement, his handcuffing, UVBS, and disciplinary consequences. And the only two defendants he alleges were involved in these actions were Mr. Marczak and Mr. Carman. Although Mr. Asher describes actions taken by each of the other defendants, none of those allegations tie them to responsibility for the acts that Mr. Asher asserts violated his rights. Because there are no allegations of personal involvement by the other defendants in any allegedly unconstitutional act, the claims against them should be dismissed. *See Clemons*, 477 F.3d at 967.

---

[2] Even if an allegation of an ongoing violation was made, Mr. Asher's official capacity claims would still fail, because he has not requested prospective injunctive relief. *See 281 Care*, 638 at 632.

### D.  Fourteenth Amendment Due Process Claims

Though unclear, it seems that Mr. Asher is raising both substantive and procedural due process claims based on his placement in HSA. None of these claims survive the defendants' Motion to Dismiss.

#### 1.  Procedural Due Process

Procedural due process claims require a two-step inquiry. First, the plaintiff must first demonstrate that they have been deprived of a protected liberty of property interest. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). A protected liberty interest can arise from two sources: The Due Process Clause itself, or from statute. *Id.* (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). If the plaintiff was deprived of such an interest, the Court then must consider what process was due by balancing several factors, including the specific interest affected; the likelihood that the procedures used would result in an erroneous deprivation; and the institutional interest in providing the process that it did, including the costs and burdens of additional process. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 332–35 (1976)).

For a confined person to be deprived of a liberty interest, they must be subjected to an "atypical and significant hardship…in relation to the ordinary incidents of [confined] life." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quotation omitted). Though MSOP clients are not prisoners, this Court has previously found that the "atypical and significant hardship" standard applies to them as well. *Flores v. Moser*, No. 16-cv-1860 (ADM/KMM), 2019 WL 2016789 at *7 (D. Minn. Jan. 7, 2019). Mr. Asher alleges that he was placed in wrist restraints and escorted to HSA. His restraints were removed shortly after his arrival to HSA, and the HSA placement lasted only 24 hours. Though staff removed his glasses for safety reasons, he was only without them for two hours. (Compl. at 3.; *see also* ECF No. 12 at Ex. 3.) Under settled law in this District, the HSA placement as alleged did not deprive Mr. Asher of a liberty interest in a cognizable manner.

This Court has previously held that an eight-day confinement in "administrative isolation" at MSOP without a hearing was not an "atypical and significant" hardship because the institution had legitimate security concerns about the plaintiff. *Holly v. Anderson*, No. 04-cv-1489 (JMR/FLN), 2008 WL 1773093 at *8

6

(Apr. 15, 2008) (order adopting report and recommendations).  The legitimate concerns arose out of an earlier incident, alleged by the plaintiff in his own complaint, where he had been in a fight with another prisoner and had "poked" him in the head with a pen.  *Id.*  The court found that those allegations "indicate[d] that Plaintiff had some idea of why he was being placed in 'administrative isolation' even if he did not agree with being confined there."  *Id.*  Similarly, Mr. Asher's complaint contains allegations that clearly show why he was placed in HSA.  After repeatedly refusing to follow directions given by the security counselors, and being told that he would be placed in HSA if he did not follow those directions, Mr. Asher continued to refuse to comply.  And Mr. Asher's HSA placement was only twenty-four hours, much less than the eight days in *Holly*.

In a more recent case, this Court found that a twenty-four-hour placement in HSA, including four hours in handcuffs, did not impose a significant and unusual hardship in relation to the ordinary incidents of life at MSOP.  *Green v. Lake*, No. 14-cv-1056 (ADM/SER), 2019 WL 1324851 at *5 (Mar. 25, 2019) (order adopting report and recommendation); *see also Hall v. Ramsey Cty*, 801 F.3d 912, 919–20 (8th Cir. 2015) (finding no procedural due process violation where a civilly-committed individual was placed in segregation for a short time based on "uncooperative" behavior and an inability "to follow directions."); *Larson v. Jesson*, No. 11-cv-2247 (PAM/LIB), 2018 WL 3352926 at *5 (D. Minn. July 9, 2018) (noting that "the placement in administrative segregation is not a constitutional deprivation actionable under § 1983.").  Against this backdrop, Mr. Asher has not alleged the infringement of a protected liberty interest adequate to support his due process claim.

Finally, even if Mr. Asher had sufficiently alleged that he had been deprived of a protected liberty interest, he has not alleged any facts that would demonstrate that he received less process than he was due.  Critically, he does not allege that he attempted to use MSOP's grievance procedure to challenge his HSA placement, nor that the procedure was inadequate.  *See Green*, 2019 WL 1324851 at *6.  Thus, Mr. Asher's procedural due process claims fail on both prongs of the inquiry.  For this reason, they should be dismissed.

### 2. Substantive Due Process

To prevail on a substantive due process claim, the plaintiff must show that the state defendants acted in a manner that was shocking to the conscience.  *E.g.*, *Karsjens*

7

*v. Piper*, 845 F. 3d 394, 408 (8th Cir. 2017); *see also Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998) ("[I]n a due process challenge to executive action the threshold question is whether the behavior of the governmental officer is so egregious, or outrageous, that it may fairly be said to shock the contemporary conscience."). Substantive due process violations are rare. *Strutton v. Meade*, 668 F.3d 549, 557 ("only in the rare situation when the state action is truly egregious and extraordinary will a substantive due process claim arise" (quotation omitted)).

"It is well-settled that segregated confinement, in and of itself, is *not* a hardship that can give rise to an actionable due process claim." *Ahmed v. Fenesis*, No. 05-cv-2388 (JRT/FLN), 2007 WL 2746842 at *9 n.6 (D. Minn. Sept. 19, 2007); *see also Fageroos v. Richardson*, No. 16-cv-4230 (ECT/ECW), 2019 WL 3059873 at *2 (dismissing substantive due process claim that was based solely on plaintiff's placement in HSA after he refused to move to a newly-assigned room); *Green*, 2019 WL 1324851 at *6 (dismissing a substantive due process claim based on handcuffing and placement in HSA). And in this case, even if Mr. Asher's relatively brief placement in HSA was unwarranted, nothing about the allegations are so severe or outrageous so as to shock the conscience. *See Schlumpberger*, 2019 WL 1118912 at *11 ("Plaintiff simply has not alleged the type of conscious-shocking conduct required for a substantive due process violation."). Because the actions alleged in Mr. Asher's complaints are not cognizable as a violation of substantive due process, those claims should be dismissed.[3]

### E.    Fourth Amendment Claims

Mr. Asher's allegations of Fourth Amendment violations seem to be based on his being placed in handcuffs, subjected to a UVBS, and placed in HSA. The defendants argue that these claims should be dismissed because they lack substantive merit. The Court agrees.

---

[3] The defendants argue that if Mr. Asher intended to contend that his being given a BER and being placed on RS3 were violations of procedural or substantive due process, those claims would fail for the same reasons. The Court agrees. In addition, the Court notes that no defendant is alleged to have been personally involved in giving Mr. Asher the BER or placing him on RS3. Thus, those claims do not survive for failure to allege personal involvement. *See Iqbal*, 556 U.S. at 676.)

The Eighth Circuit has noted that "civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012). But this Court has already found that MSOP's practice of conducting a UVBS on clients before being placed into HSA is reasonable as a matter of law. *Larson v. Jesson*, No. 11-cv-2247 (PAM/LIB), 2018 WL 3352926 at *4 (D. Minn. July 9, 2018). And this Court and others have approved UVBSs conducted for a variety of security reasons at MSOP. *Beaulieu*, 690 F.3d at 1030 (approving policy of conducting a UVBS before a client leaves the secured facility); *Serna v. Goodno*, 567 F.3d 944 (8th Cir. 2009) (approving facility-wide UVBSs on all clients when searching for a contraband cell phone); *Semler v. Ludeman*, No. 09-cv-732 (ADM/SRN), 2010 WL 145275 at *21 (D. Minn. Jan. 8, 2010) (finding the MSOP policy of conducting a UVBS after a contact visit to be reasonable); *see also Brooks v. Gloudemans*, No. 16cv77, 2017 WL 237622 at *5 (E.D. Wis. Jan. 19, 2017) (holding that policy of unclothed body searches conducted before detainees are placed in segregated units analogous to MSOP's HSA is reasonable). Furthermore, the Supreme Court has rejected an argument in a similar context that individualized suspicion is required prior to a UVBS. *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 330–39 (2012).

Mr. Asher also seems to challenge his HSA placement as a violation of the Fourth Amendment protection against unreasonable seizure. The defendants argue that any Fourth Amendment seizure claim arising out of Mr. Asher's HSA placement is better addressed in the procedural due process context. The Court agrees. This Court has previously found that placement in HSA is more appropriately challenged under the Fourteenth Amendment, because in this context, that placement is a curtailment of liberty, not a seizure. *Schlumpberger v. Osborne*, No. 16-cv-78 (SRN/TNL), 2019 WL 1118912 at *12 (D. Minn. Jan. 25, 2019).

Because Mr. Asher's complaint is not clear as to what actions of the defendants allegedly violated the Fourth Amendment, the Court briefly addresses two other scenarios. If Mr. Asher intended to challenge the defendants' alleged violation of MSOP's use of force policy through a Fourth Amendment lens, that claim would fail as well. A violation of institutional policy does not automatically result in the deprivation of a constitutional right. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations.").

9

To the extent that Mr. Asher is attempting to allege an excessive force claim, this, too, would be unsuccessful. The Supreme Court recently held that an objective reasonableness standard applies to excessive force claims made under the Due Process Clause by pretrial detainees. *Kingsley v. Hendrickson*, 576 U.S. 389, 395–397 (2015). And the Eighth Circuit has applied this standard to Fourth Amendment excessive force claims. *Davis v. White*, 794 F.3d 1008, 1012 (8th Cir. 2015). In considering claims under this objective reasonableness standard, courts should look to factors like the need for application of force, the relationship between the need and the amount of force that was used, the extent of any injury inflicted, and whether the force was applied in good faith or maliciously and sadistically. *Kingsley*, 576 U.S. at 402 (quoting *Johnson v. Glick*, 481 F.3d 1028, 1033 (2d Cir. 1973). Critically, Mr. Asher has not alleged any physical injury resulting from the alleged events, nor excessive use of force. In the Eighth Circuit, some physical injury is generally necessary to make out an excessive force claim. *See Davis*, 794 F.3d at 1012 (collecting cases); *see also Crumley v. City of St. Paul*, 324 F.3d 1003, 1008 (8th Cir. 2003) ("[F]or the application of handcuffs to amount to excessive force, there must be something beyond allegations of minor injuries.").

In sum, no interpretation of Mr. Asher's Fourth Amendment claims is adequately pleaded. They should be dismissed.

F. **Eighth Amendment Claims**

It is entirely unclear from Mr. Asher's complaint what Eighth Amendment claims he is asserting, and though the defendants raised this in their opening brief, Mr. Asher made no attempt to clarify the claims in his response. Additionally, because Mr. Asher is not a prisoner, but a civil detainee, his rights are not protected under the Eighth Amendment, but the Fourteenth Amendment. *See Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (finding that the rights of an involuntarily committed patient arise under the Fourteenth Amendment); *Nelson v. Shuffman*, 603 F. 3d 439, 446 n.3 (8th Cir. 2010) (noting that residents of the analogous Missouri Sex Offender Program were protected under the Fourteenth Amendment). Mr. Asher's Eighth Amendment claims should be dismissed.

### G. Claims Based on the Minnesota Patients' Bill of Rights and the Minnesota Constitution.

Mr. Asher's response memorandum seems to assert new claims based on the Minnesota Patients' Bill of Rights and the Minnesota Constitution. These claims, if asserted, must fail. First, a response to a motion to dismiss is the incorrect mechanism to add new allegations to a complaint. Allegations made in subsequent legal memoranda should not be used to correct deficiencies within a complaint. *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 887 (D. Minn. 2010). "To hold otherwise would mean that a party could unilaterally amend a complaint at will." *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (citation omitted). This alone is a reason to exclude these allegations.

Second, the Minnesota Patients' Bill of Rights does not create a private cause of action. *Favors v. Kneisel*, 902 N.W. 92, 94–96 (Minn. Ct. App. 2017). And there is no private right of action for monetary damages under the Minnesota Constitution. *Honan v. Cty. of Cottonwood*, No. A04-1636, 2005 WL 2077277 at *4 (Minn. Ct. App. Aug. 30, 2005) ("Minnesota courts have consistently held that there is no private right to monetary damages for deprivation of due process rights under the Minnesota Constitution"); *see also Riehm v. Engelking*, No. 06-cv-293 (JRT/RLE), 2007 WL 37799 (D. Minn. Jan. 4, 2007) ("Minnesota has no statutory scheme providing for private actions based on violations of the Minnesota Constitution."). And injunctive relief is similarly unavailable. "Absent waiver by the state, a federal court has no power to order a state officer exercising delegated authority to comply with duties imposed by state law." *Grand River Enters. Six Nations, Ltd. v. Beebe*, 467 F.3d 698, 701–02 (8th Cir. 2006). Accordingly, the state law claims Mr. Asher appears to be bringing in his response brief should be dismissed.

### III. Recommendation

For the reasons set forth above, the Court concludes that Mr. Asher's claims cannot survive the defendants' Motions to Dismiss. Accordingly, the Court makes the following recommendations:

1. The defendants' Motions to Dismiss (ECF Nos. 16, 29) be GRANTED
2. Mr. Asher's Complaint be DISMISSED WITH PREJUDICE.

Date:  July 29, 2020                                  *s/ Katherine Menendez*
                                                      Katherine Menendez
                                                      United States Magistrate Judge

## NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

Under Advisement Date: This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.